The People *v.* Leet et al.

---

THE PEOPLE *v.* SOLOMON LEET et al.

ORIGINAL SUIT.

The law of 26th February, 1839, required that collectors of the revenue should be appointed annually. The act of 6th March, 1843, provided that sheriffs should be, *ex officio*, collectors, and should give bonds similar to those previously required of collectors, subjecting them to the same liabilities and penalties, and also requiring them to take an additional oath, combining in one office the duties of collector and sheriff. By the act of 3d of March, 1845, the prior laws concerning revenue were repealed, but all their material provisions, were reënacted and continued in force:—
*Held*, that this change in the laws did not *ipso facto* exonerate the sureties on the bonds of the sheriffs, the duties of the office not being enlarged, and the additional duties required being within the scope of the office.

THIS was an original suit, commenced against Leet, as principal, and six others, as his sureties, to recover the penalty of a bond given on the 2d day of September, 1844, the condition of which was, that Leet should perform all the duties required to be performed of him, as collector of the county of Henderson, in the time and manner prescribed by law; and when he shall be succeeded in office, shall surrender and deliver over to his successor in office all books, papers, and moneys belonging to said county, or to the State, and appertaining to his said office, then the bond to be void, &c. The declaration averred a breach of the bond, and was filed in this court at December term, 1847. The defendants entered their appearance, and the following state of facts was agreed upon.

" Solomon S. Leet was elected sheriff of Henderson county, Illinois, in the month of August, A. D., 1844, for the term of two years. On the second day of September, A. D., 1844, the said Leet and the other defendants, as his securities, executed a

collector's bond, which is herewith presented to the court. The said Leet collected all the revenue due the State of Illinois in the said county of Henderson, for the fiscal year 1844, and paid it into the treasury of said State, according to law. The said Leet, still continuing sheriff of said county, was a defaulter on the revenue due the State of Illinois from the said county of Henderson, for the fiscal year 1845, to the amount of $765.50, ($288.61 only of which was payable in specie, and $476.89 of which was payable in gold or silver or auditor's warrants,) which is still unpaid.

Now, if the court be of opinion that, according to law, the said Leet's said securities are upon the said bond liable for the said default of the said Leet, for the said fiscal year 1845, then judgment is to be rendered against the said defendants for the said sum of $765.50, otherwise, judgment is to be rendered against said plaintiffs as in case of nonsuit.

The court, at this term, gave judgment against the defendants for the penalty of the bond, and for $765.50 damages, together with costs.

This case was first submitted to the court at December term, 1848. After having been held under advisement, a re-argument was ordered upon the following proposition : " On the supposition, that the bond sued on covered the collection of the taxes for the year 1845, was the law, creating that liability, repealed, so as to discharge the sureties before the duty of collecting such taxes devolved on the sheriff? " After the second argument, the case was held under advisement until the present term.

D. B. CAMPBELL, for the people.

Sheriff made *ex officio* collector. He was required to give bond similar to that before then given by collectors, conditioned that, when he shall be succeeded in office, he shall surrender and deliver over to his successor all books, papers, moneys, &c., which must mean after his term of office, as sheriff and collector, shall have expired, which was two years from the time of collection. The offices are inseparable and indivisible, settled

on one person for two years. When he gives the prescribed bond he is qualified. No other bond is required by law during his term of office, and this bond must be given before he can enter upon the duties of his office as sheriff and collector. No law to intimate that, if the sheriff does not give second bond, his office shall be vacated, and no law directing him to give but the one bond alluded to.

If the one bond does not operate as security for the collection and paying over of the revenue of the two years, then the law is very lame; only requiring security for the first year, and permitting collectors to remain in office without giving any pledge for the faithful performance of his duties for the second year.

The bond being in double the amount of the revenue for the first year, is ample and sufficient; because, if the sheriff should not pay over the revenue of the first year, at the time specified by the law, the law tries him for his defalcation, and dismisses him from office; his successor then has to give a bond for collection, &c. of the revenue for the second year.

By the law of 3d March, 1845, the legislature enacted the same revenue law in substance as was in force under the acts of 6th March, 1843, and February 26th, 1839. No material variation in the laws. The State tax is the same, 20 cents on the $100; the kind of money received is the same; the same property is exempted from taxation; the process is in all respects the same.

But it is contended, that the county tax has been increased by the act of 3d of March, 1845, (see appendix to Rev. Stats. p. 599.) Is this so? The act of February 26th, 1839, reads as follows: " The county commissioners' courts, &c., are hereby authorized and empowered to levy a tax for county purposes, which tax shall not exceed one half per cent. on every one hundred dollars' worth of real or personal property, unless authorized so to do by special act of the General Assembly." The act of 1845 does not increase the county tax, but merely transfers one mill of the county tax from the counties to the State for that year.

The day that the act of 3d of March, 1845, was passed, was the day, by the previous law, that the clerk was required to deliver the list of taxable lands to the assessor. By the law of

1845, the clerk was required, on the 2d of September thereafter, to furnish the list, &c., to collectors, when he was to proceed to collect the revenue of that year.

But it is understood, that the sheriff and· collector entered upon the duties of collecting for both years, and was so bound, as soon as he entered into bond on the 2d of September preceding.

The cases cited by defendants from 8 Mass. 374; 6 Harris & Johnson, 95; 6 & 7 Ohio, 520, and Breese, 36, are not applicable.

No point can be presented in this case, but has been already settled by this court.

By the act of March 6th, 1843, the sheriff is made *ex officio* collector.

J. MANNING, for defendants.

The liabilities of Leet's securities extended only to his acts as collector for one year — the fiscal year 1844.

The sheriff is made *ex officio* collector of taxes. Acts 1842, 1843, § 11. By virtue of his office as sheriff, he shall be collector; but *how?* According to the laws then in force, creating the office and prescribing the duties of collector. A separate office in its length and breadth, as then defined, was attached to that of sheriff. The offices, though, devolved upon one person, are still distinct as before. He takes separate oaths in the different offices. Acts 1839, 7, § 12, and Rev. Stats. 411, § 2. He gives separate bonds in both offices. Acts 1839, 8, § 12; Rev. Stats. 514, § 2. The penalties of the bonds are different; the conditions are different. The bond for the collector's office is sent to the Secretary of State. Acts 1839, 8, § 12; Rev. Stats. 441, § 29.

The bond for the sheriff's office is filed in the office of the clerk of the Circuit Court. Rev. Stats. 514, § 3; Rev. Laws, 1833, 573, § 3. The offices were not only distinct at the time of the execution of the bond, but this distinction was continued in the revised code. Rev. Stats. 441, § 28; 514, § 2.

Upon neglect or refusal to qualify as collector, his office of sheriff is to become vacant. Acts 1842, 1843, 234, § 11. But he might have qualified as sheriff previously; so for some time

he might hold one office without the other. Although he be sheriff, he becomes collector only by qualifying as such.

The duties of the two offices are defined by different laws, and those duties are in no respect similar. The office of collector was annual at the time it was attached to that of sheriff. Acts 1839, 7, § 12, and necessarily continued so afterwards.

The sheriff does not become absolutely collector by virtue of his office as sheriff; he acquires the right of becoming such, but only becomes absolutely such by qualifying, as in case of all offices where a qualification is required.

A qualification for the collection of each year's tax is required, and this makes the office annual as effectually as if there were an annual appointment. Should we construe this qualification to be required only *biennially*, we destroy the security which the State has fixed for the collection of its own revenue, that is, the annual security for the collection of the taxes of each year, or the vacation of the office of the sheriff, and the appointment of an officer who will give such security. So that from the policy of the law, as well as from its language, the office of collector must be construed to be annual.

But where the office is for a certain term of time, the liability of the officer's securities extends only to his acts during that term. Bigelow v. Bridge, 8 Mass. R. 274; Commonwealth v. Fairfax et al. 4 Hen. & M. 208, (cited with approval, 6 & 7 Ohio R. 520.) By the statute of Virginia the sheriff was appointed for one year, but might be continued in office. So here the collector qualifies for one year, but may continue in office for another year; yet, in this, as in the last cited case, his securities for the first year would not be liable for his acts the second year. Hennett & Russell v. The State, &c., 6 Harris & Johns. 95. In the last cited case, the sheriff continued in office from 1814 to 1816, but should have given bond annually. So here the collector acted in 1844 and 1845, but should have executed bond annually. There the securities were held not to be liable beyond the year for which the bond was given; so should it be here.

Independent of these authorities and reasonings, from a general view of the statutes in force at the time of the execution of

the bond, the securities could not be liable for the default of the collector in 1845.

The securities on the collector's bond were only liable for the collection of one year's taxes. Acts 1839, 8, § 13. The sheriff, as collector, is to give a similar bond. Acts 1842, 1843, 234, § 11. This must be construed to mean, that it shall have a similar effect. The law, in regard to the extent of time for which the securities were to be liable, was in no wise changed, and a similar bond could only make them liable for a similar term of time. This bond is *verbatim* in form of the old collector's bond.

The collector was required to give bond in a penalty at least double the amount of tax to be collected. Acts 1839, p. 8, § 13; and the sheriff was required to give a similar bond; but this was impossible to do, unless a bond was to be given annually for the assessments vary annually.

And this also was intended to give the securities notice of the amount to which they might be liable. In this case they gave bond in double the amount of the tax of 1844, and could have had reference to the sheriff's acts in collecting the tax of that year only.

The sheriff is to be subject to the same "liabilities and penalties" as was the collector. Acts 1842, 234, § 11. Now, on this very bond the collector, before the act of 1842, would have been liable for the tax of one year only; it follows that the sheriff's securities in his office of collector, are only liable to the same extent.

The intention of the contracting parties, under the existing law, is to govern the construction of the contract, and the whole is to be construed favorably to the securities. They are not to be made liable by implication. 3 Scam. 126; 1 Gil. 583. By the law and the bond, the securities could not have intended that they were liable for the tax of 1845; there is no such express undertaking on their part, and if they are made liable it must be by implication.

In deciding this case we are fixing a rule. Deciding adversely to the securities is in effect determining that it is unnecessary for the collector to give bond annually; but that giving bond

once, in a penalty double the amount of one year's tax, is all the security required for the collection of two years' taxes.

But admit, for the purpose of argument, that, at the time of the execution of the bond, the liability of Leet's securities might be construed to extend to the collection ·of the tax of 1845, yet the securities have been released.

The law existing at the time of making a contract enters into and becomes a part of it. Bronson v. Kinzie et al. 1 How. 311; Green v. Biddle, 8 Wheat. 1, &c. If this be so between private persons, à fortiori is it in statutory bonds between securities and the State. Therefore a repeal of the law under which the bond was given, and the substitution of another and different law, without the consent of the securities, terminates their liability. The law under which this bond was given was repealed March 3, 1845. Rev. St. 453, § 109 to 474.

The securities are not liable for acts done under laws not in force at the time their bond was executed. Reynolds v. Hall, 1 Scam. 35. Here the default was under the law of 1845.

But the State not only repealed the law under which the bond was executed, but increased the collector's responsibility in the year 1845. The State tax for 1844 was twenty cents on the $100. Acts 1842, 231. By Rev. St. 599 it was increased to thirty cents on the $100, which discharged the securities for the second year. Miller v. Stewart, 9 Wheat. 680; 5 Pet. Cond. R. 727; United States v. Kirkpatrick, 5 Id. 736; 1 Scam. 39.

Any agreement with the principal, changing the contract without the consent of the securities, discharges them. They have a right to say, this is not my contract. Davis v. The People, 1 Gil. 409; Whitcher v. Hall, 11 E. C. L. 224; Liverpool Water-works v. Atkinson, 6 East, 507.

To the proposition submitted by the court the following answer is offered:

The revenue law which is embodied in the Revised Statutes, 433 et seq., took effect from the date of its approval. It was published as a chapter of the Revised Statutes by special enactment. Rev. St. 473, 474, § 42.

The taxes then already levied were to be collected under the repealed law; and liabilities then existing, or which might arise

under the repealed law, on the part of sheriffs, were to be enforced under the provisions of the repealed law.   St. 453, § 110. But this could only relate to the collection of taxes then already levied; for all the revenue laws affecting the liability of collectors were repealed.   St. 453, § 109.

No tax for the year 1845 was levied on or before the 3d of March, 1845.

TREAT, C. J.   This is an original suit, brought in this court on the bond given by the late sheriff of Henderson county, for the collection of the revenue.   It is submitted on an agreed state of facts, in substance as follows:   Leet was elected sheriff in August, 1844, for the term of two years, and executed the bond in question, with the defendants as his sureties; he collected the taxes for the year 1844 and faithfully accounted for the same, but he failed to pay over a balance of $765.50, due the State for the taxes of 1845; it is agreed, if the sureties are liable for this default of the sheriff, that judgment shall be entered against them for that amount; otherwise, judgment shall be entered in their favor.

1st. It is contended that the sheriff was bound to give a bond annually for the collection of the revenue, and consequently that the defendants are not responsible for his failure to collect and pay over the taxes for the year 1845.   The act of the 26th of February, 1839, directed the appointment of a collector annually, and required him to give a bond in the penalty of at least double the amount of the taxes to be collected by him.   The act of the 6th of March, 1843, contained this provision: " The sheriff of each county shall be *ex officio* collector of taxes for his county, and shall take and subscribe the oath, and perform all the duties required by law of such collector, and he shall give a bond similar to that required to be given by the collector, and shall be subject to the same liabilities and penalties; and upon refusal to qualify and act as collector, his office as sheriff shall be considered vacant, to be filled as in other cases of vacancy." This provision conferred on the sheriff all of the powers belonging to the office of collector.   It imposed new and important duties on the sheriff.   To secure their faithful performance, he

The People *v.* Leet et al.                      .

was required to take an additional oath and give an additional bond. This statute virtually abolished the office of collector, and transferred all of its powers and duties to the sheriff. It charged him with the collection of the revenue. This duty was attached to the office of sheriff, and could not be performed by any other officer. The ordinary duties of the office and the duty of collecting the taxes were inseparable. They both pertained to the same office and were to be discharged by the same person. If the sheriff failed to give the additional bond, he forfeited not only his right to collect the taxes but his office of sheriff. He is styled collector, but this expression is used to designate a particular branch of his duties. He does not hold two separate and distinct offices. He performs the duties previously belonging to two offices. But the functions of both are combined and vested in one. It follows that the sheriff was not bound to give an annual bond for the collection of the revenue. The bond in question embraced his entire term of office. The collector was required to give a bond annually, because he was appointed for but one year. But the sheriff was chosen for two years, and his bond for the collection of.the taxes, like his bond for the performance of the ordinary duties of his office, covered his liability for the same period.

2d. It is insisted that the sureties were released from responsibility by the repeal of the law under which the bond was executed. · The act of the 3d of March, 1845, repealed the prior laws concerning the revenue; but all of their material provisions were incorporated into that act. The existing laws were in terms repealed, but they were in substance reënacted and continued in force. This mere change in the law did not, *ipso facto*, exonerate the sureties. It gave them no cause of complaint, for the duties of their principal were not thereby enlarged or extended. They cannot insist upon any exemption from liability unless the change operated to their prejudice. This court held, in the cases of The Governor *v.* Ridgeway, 12 Ill. 14, and Compher *v.* The People, Id. 290, that the sureties of an officer upon his official bond, conditioned for the faithful discharge of the duties of the office, are liable for the performance of all duties imposed upon him which are within the scope of his office,

23 *

whether such duties are imposed by laws passed before or after the execution of the obligation. It was said, in the latter case, " The power to control the revenue is one of the highest attributes of sovereignty. Without this power no government could exist, and it cannot be supposed that the general assembly intended to part with this important prerogative, or to contract that no change should be made in the manner of collecting the revenue, during the continuance in office of any of its collectors. Parties who go security on bonds of this character, do so with the full knowledge and expectation that the revenue laws will be changed and the duties of collectors altered as the public interest may require ; and they have no right to complain of any alteration in the laws not materially changing the character of the duties of their principal, especially when such alterations are in nowise prejudicial to their interest." The principle of those decisions is perfectly conclusive of this case. The condition of the bond is, that the sheriff " shall perform all the duties required to be performed of him as collector of the said county of Henderson, in the time and manner prescribed by law." The laws in existence when the default occurred were substantially the same as those in force when the bond was executed. If any additional duties were imposed on the sheriff, they were clearly within the scope of his office.

The objection that the rate of taxation was increased by the act of the 1st of March, 1845, has no foundation in fact. That act increased the amount of the taxes for state purposes, but it reduced the rate of taxation for county purposes in precisely the same ratio. The aggregate amount of the taxes was not increased. This change could not prejudice the sureties.

The people are entitled to judgment.

*Judgment for plaintiffs.*